IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DAVID PILL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ANGIE'S LIST, INC., SCOTT A. DURCHSLAG, THOMAS R. EVANS, GEORGE D. BELL, MARK BRITTO, ANGELA R. HICKS BOWMAN, MICHAEL S. MAURER, DAVID B. MULLEN, MICHAEL D. SANDS, H. ERIC SEMLER, SUSAN THRONSON, IAC/INTERACTIVECORP, ANGI HOMESERVICES INC., and CASA MERGER SUB, INC. <br><br> Defendants. | Civil Action No. _____ <br><br> COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff David Pill ("Plaintiff"), by and through his attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1.     This action stems from a proposed transaction announced on May 1, 2017 (the "Proposed Transaction" or "Merger"), pursuant to which Angie's List, Inc. ("Angie's List" or the "Company") will be acquired by IAC/InterActiveCorp ("Parent"), effectuated through the merger of Angie's List and Casa Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Halo TopCo, Inc. (since renamed to "ANGI Homeservices Inc.") ("Parent Sub" and together with Parent and Merger Sub, "IAC"), itself a wholly owned subsidiary of Parent.

2.     On May 1, 2017, Angie's List Board of Directors (the "Board") caused the Company to enter into an agreement and plan of merger with IAC (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, each holder of Angie's List common stock is entitled to either (a) exchange on a one-to-one ratio each share of Angie's List common stock for a single share of Class A common stock, with one vote per share, in Parent Sub, and/or (b) receive payment in the amount of $8.50 in cash for each share of Angie's List common stock up to an aggregate total of $130 million for all of Angie's List shares of common stock issued and outstanding (the "Merger Consideration").

3.     On June 29, 2017, Parent Sub filed a Registration Statement on Form S-4 (the "S-4") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. As described herein, the S-4 omits material information with respect to the Proposed Transaction, which renders it false and misleading, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 ("Rule 14a-9") promulgated thereunder.

4.     Plaintiff seeks to enjoin Defendants (defined below) from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' wrongdoing described herein.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, and maintains operations within, this District, or is

an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Angie's List common stock.

9.     Defendant Angie's List is a Delaware corporation with its principal executive offices located in Indianapolis, Indiana.  Angie's List Class A common stock is listed on the NASDAQ under the symbol "ANGI."

10.     Defendant Scott A. Durchslag serves as Parent's President and Chief Executive Officer ("CEO"), and has been a member of the Board since 2015.

11.     Defendant Thomas R. Evans ("Evans"), the Chairman of the Board, has been a member of the Board since 2016.  Evans serves on the Board's Compensation Committee. Evans also served on the Board's Strategic Advisory Committee (the "Committee") in connection with the Proposed Transaction.  Evans will remain a director of Parent Sub upon consummation of the Merger.

12.     Defendant George D. Bell ("Bell") has been a member of the Board since 2016. Bell serves on the Board's Audit Committee. Bell also served on the Committee in connection with the Proposed Transaction.

13.     Defendant Mark Britto ("Britto") has been a member of the Board since 2011. Britto serves on the Board's Compensation Committee.

14.     Defendant Angela R. Hicks Bowman ("Bowman") has been a member of the Board since 2013.  Bowman will remain a director of Parent Sub upon consummation of the Merger.

15.     Defendant Michael S. Maurer ("Maurer") has been a member of the Board since 2012.  Maurer serves on the Board's Audit Committee and its Nominating and Corporate Governance Committee.

16.     Defendant David B. Mullen ("Mullen) has been a member of the Board since 2014.  Mullen serves on the Board's Audit Committee.  Mullen also served on the Committee in connection with the Proposed Transaction.

17.     Defendant Michael D. Sands ("Sands") has been a member of the Board since 2016.  Sands serves on the Board's Nominating and Corporate Governance Committee.

18.     Defendant H. Eric Semler ("Semler") has been a member of the Board since 2016.  Semler serves on the Board's Nominating and Corporate Governance Committee.  Semler also served on the Committee in connection with the Proposed Transaction.

19.     Defendant Susan E. Thronson ("Thronson") has been a member of the Board since 2012.  Thronson serves on the Board's Audit and Compensation Committees.

20.     Defendants Durchslag, Evans, Bell, Britto, Bowman, Maurer, Mullen, Sands, Semler, and Thronson are collectively referred to herein as the "Individual Defendants."

21.     Defendant Parent is a Delaware corporation with its principal executive offices located in New York City.  Parent's Class A common stock is listed on the NASDAQ under the symbol "IAC."

22.     Defendant Parent Sub is a Delaware corporation formed in connection with the Proposed Transaction as a wholly owned subsidiary of Parent.

23.     Defendant Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent Sub, which was formed solely for the purpose of consummating the merger of Merger Sub with and into Angie's List.

24.     IAC and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

25.     Angie's List operates a nationwide local services consumer review service and marketplace.  Angie's List helps facilitate transactions between individual consumers and service professionals by providing an online directory that allows users to read and publish reviews of local businesses and contractors.  Beginning in July 2016, Angie's List, what had formerly been a subscription-only service, started offering a free membership tier.

26.     Angie's List is, and has been, a profitable company.  According to Company Press Releases announcing year-end 2015 and 2016 financial results, Angie's List's total operating revenues increased by approximately 3% over the past two years, and its adjusted EBITDA experienced extraordinary growth, increasing by approximately 557% over the same two-year period.  Moreover, according to the S-4, Angie's List's stockholders equity increased from a deficit of approximately $22.2 million at year-end 2014, to equity of $4.5 million at year-end 2016, an approximate increase of $26.7 million.

27.     The Company issued a Press Release dated February 15, 2017, announcing its fourth quarter and full year 2016 financial results, which provided the following:

> "2016 was a transformative year for Angie's List," said Scott Durchslag, President and Chief Executive Officer of Angie's List. "We achieved a number of important objectives, including removing the reviews paywall, introducing freemium tiers, migrating our technology platform, strengthening our marketing and sales processes and delivering new products to our customers."

"These accomplishments enabled us to end the year with momentum in new member growth as we added approximately 785,000 gross members in the fourth quarter and finished the year with 5.1 million members, an increase of 55% from a year ago," continued Durchslag. "Importantly, we achieved these results while balancing investments for growth with significant reductions in our cost structure. While this is good progress, we continue to expect it will take time before we meaningfully improve trends in our financial results."

"In 2017, we have three priorities: 1) Build products that increase member engagement, 2) Strengthen the value proposition to our service providers, and 3) Continue to improve our cost structure. I am excited about the opportunity ahead of us and look forward to building on the strong foundation that we established last year."

28.     Despite the positive results and economic outlook for the Company, the Board agreed to sell Angie's List to IAC at what appears to be an inadequate price and through a process that virtually assures that the Merger will be consummated.

29.     For example, the Merger Consideration's $8.50 per share value, either in cash or implicitly via one share of Parent Sub stock, is below Angie's List's 52-week high of $10.67 per share.

***The Sales Process***

30.     IAC initially attempted to acquire Angie's List in October 2015 for $8.50 per share, increasing its offer to $8.75 per share (greater than the Merger Consideration) in November 2015.  The Board determined that $8.75 per share undervalued the Company and its long-term standalone prospects.

31.     Thereafter, in March 2016, the Company unveiled its new three-phase strategic plan, which was set to be implemented from 2016 and into 2018, but was not expected to realize operating results before 2017.

32.     Nevertheless, for reasons unknown, on October 6, 2016, the Board formed the Committee—consisting of Bell, Evans, Mullen, and Semler—to examine various potential strategic options and consider financial advisors.

33.     Without performing a selection process, the Committee retained Allen & Company ("A&C") and Bank of America Merrill Lynch ("BofA Merrill Lynch" and together with A&C, the "Financial Advisors"), agreed to by the Board on October 17, 2016.

34.     Beginning on November 15, 2016, the Financial Advisors began contacting 62 potential acquirers, including 51 strategic partners and 11 financial sponsors.  Of those 62, non-disclosure agreements were entered into with 28.

35.     Ultimately, 4 strategic partners emerged as interested acquirers, made up of Companies A, B, and C, and IAC.  Company A submitted an indication of interest on January 8, 2017, which included a combination of Company A and Angie's List, leaving Angie's List stockholders with a 43% stake in the combined company.  Following the performance of due diligence and negotiations, Company A offered a combination of the two companies where Angie's List's stockholders would receive a 42% stake in the combined company, along with $100 million.  The S-4 did not reveal any information as to the value of the combined entity.

36.     On January 24, 2017, Company B submitted a preliminary indication of interest to purchase all of Angie's List outstanding common stock for $8.65 to $8.95 per share in cash.  For undisclosed reasons, Company B fluctuated as to purchase price through April 24, 2017, when it made its best and final offer of $8.00 per share in cash to purchase all of Angie's List's outstanding common stock.

37.     On January 31, 2017, Companies A and B were given access to an online data room that contained confidential information about Angie's List.  From February 7 through February 14, 2017, Angie's List held due diligence meetings with Companies A, B, and C.  Company C thereafter ceased active engagement.

38.     Although there was no indication that IAC was granted access to the online data room, on or around February 10, 2017, IAC requested additional due diligence information from Angie's List, which was granted by the Board.

39.     Throughout negotiations with IAC, Defendant Evans acted as the *de facto* negotiator on behalf of Angie's List, attending meetings with IAC, including its CEO, Joey Levin, and discussing various aspects of the Proposed Transaction.  These meetings took place on March 16, March 31, April 10, April 11, April 15, April 18, April 24, and April 29, 2017.  No discussions as to any future employment relationships for any of the Individual Defendants or the Company's management were disclosed in the S-4.

40.     Although Evans met with Company B in Chicago on April 20, 2017, there is no indication that Evans ever met with Company A.

41.     On May 1, 2017, the Board, without any Individual Defendants abstaining, voted to enter into the Merger Agreement and to recommend Angie's List's shareholders approve the Proposed Transaction.

***The Merger Agreement***

42.     The Merger will be effectuated through a multi-step process.  First, Parent Sub will issue "Class B" shares, which are entitled to ten votes per share, to Parent on a one-to-one stock exchange ratio, pursuant to which Parent will convert 100% of the Class A shares it owns in Parent Sub into Class B shares (it currently owns all of Parent Sub's Class A shares issued and outstanding).  Parent will also contribute its wholly owned HomeAdvisor Entities to Parent Sub. The HomeAdvisor Entities include ANGI Homeservices, HomeAdvisor (US), HomeAdvisor (International), each of their respective subsidiaries and each other entity that is a direct or indirect subsidiary of ANGI Homeservices.

43.    Subsequent thereto, Merger Sub, wholly owned by Parent Sub, will merge into Angie's List.  The holders of Angie's List issued and outstanding common stock will be entitled to receive either (a) one share of Parent Sub Class A common stock, which is entitled to one vote per share, in exchange for one share of Angie's List common stock, and/or (b) a payment of $8.50 in cash for each share of Angie's List common stock.  An illustrative summary of the multi-step transaction was provided in the S-4 and is included below:



44.     Following the closing of the Merger, Angie's List's current shareholders will own approximately 10 to 13% of the equity in Parent Sub (the post-Merger entity), a significant dilution of their interest, and voting rights of approximately 2%.  "This voting control will limit the ability of other stockholders to influence corporate matters and, as a result, ANGI Homeservices may take actions that stockholders other than IAC do not view as beneficial.  This voting control may also discourage transactions involving a change of control of ANGI Homeservices, including transactions in which holders of Class A shares might otherwise receive a premium for their shares."  S-4 at 47.

45.     The likelihood of a competing bidder emerging to purchase the Company at a higher price is significantly handicapped because the Board agreed to include in the Merger Agreement certain deal protection devices that will prevent any alternative acquirer from submitting a higher offer for the Company.   These deal protection devices include a "No Solicitation" clause, "Fiduciary Out" and "Matching Rights," and a $20 million termination fee, which is payable by Angie's List to IAC in the event that the Individual Defendants decide to terminate the Merger Agreement, including in order to accept a superior proposal.  Also, at least 28 other potentially interested parties entered into non-disclosure agreements with Angie's List that may have prevented them from submitting superior offers.

*The S-4's Material Misrepresentations/Omissions*

46.     Although the S-4 provides Angie's List's shareholders with a summary/overview of the Proposed Transaction, it omits certain critical information which renders portions of the S-4 materially incomplete and/or misleading, in violation of the Securities Act provisions discussed herein.   As a result, Angie's List's shareholders lack material information necessary to allow them to make an informed decision concerning whether to vote in favor of the Merger.

47.    In particular, the S-4 contains materially incomplete and/or misleading information concerning, *inter alia*, (a) the financial analyses performed Angie's List's Financial Advisors in support of their so-called "fairness opinions" that approved the Merger Consideration, including the projections that the Financial Advisors relied upon in performing their financial analyses, and (b) the sales process leading to the Merger, including potential conflicts of interest.

48.    The S-4 states that, in performing their financial analyses and arriving at their so-called "fairness opinions," the Financial Advisors relied upon and reviewed certain internal financial information, including forecasts, (the "Projections") that were provided to them by Angie's List and IAC and had been prepared by Angie's List's and IAC's respective management.  For example, A&C reviewed "certain *internal financial forecasts, estimates* and other financial and operating data relating to Angie's List prepared by the management of Angie's List reflective of such management's views as to the likely future financial performance of Angie's List on a standalone basis."  S-4 at 88 (emphasis added).  BofA Merrill Lynch reviewed "certain internal financial and operating information with respect to the business, operations and prospects of Angie's List furnished to or discussed with BofA Merrill Lynch by the management of Angie's List, *including certain financial forecasts* relating to Angie's List prepared by the management of Angie's List reflective of such management's views as to the likely future financial performance of Angie's List on a standalone basis."  S-4 at 92 (emphasis added).

49.    Management's financial projections are considered by courts to be the most important information a stockholder can have when evaluating the proposed consideration in a merger and deciding whether to vote in favor of the merger.  Projections are highly material

because they enable shareholders to understand the company's intrinsic value and the extent of the market's undervaluation of their company.

50.     However, Angie's Lists Projections are not sufficiently disclosed in the S-4; they are almost entirely omitted.   This makes it impossible for Angie's List's shareholders to understand and interpret the various financial analyses that incorporated and/or relied upon such Projections, including in valuing Angie's List's shares, which necessarily forms a component of the overall Merger Consideration in light of the $130 million cap on cash consideration.   Indeed, the Financial Advisors performed discounted cash flow analyses on both Angie's List and the HomeAdvisor Business.   S-4 at 103.   Those analyses were based on unlevered, after-tax free cash flows for each business, however, those cash flows weren't disclosed.   *Id.*

51.     Although Angie's List's Projections for fiscal year 2017 through 2020 are purportedly summarized on pages 105-107 of the S-4, those Projections provide only the revenue and adjusted EBITDA estimates for Angie's List and HomeAdvisor Business, and are therefore materially incomplete.   In fact, the Projections fail to disclose material line items that make up the unlevered, after-tax free cash flows as calculated by the Financial Advisors and used in their respective financial analyses of Angie's List, including in their discounted cash flow analyses. These line items include:  (i) each company's earnings before interest and taxes, (ii) cash taxes, (iii) depreciation and amortization, (iv) capital expenditures, and (v) changes in working capital. The Financial Advisors also used stock-based compensation as part of their free cash flow calculation, and omitted this information from the S-4.

52.     The S-4 further fails to disclose the "estimates provided by the management of Angie's List as to the amount and timing of potential cost savings and revenue enhancements," *i.e.*, the synergies expected to result from the Merger.   These are material because the Financial

Advisors "calculated the range of implied per share equity values of ANGI Homeservices allocable to holders of Angie's List common stock on a pro forma basis assuming a closing date of December 31, 2016 and utilizing the results of the standalone discounted cash flow analyses for Angie's List and the HomeAdvisor Business described above *after taking into account potential Synergies*." S-4 at 105 (emphasis added).

53.     Additionally, the S-4 fails to disclose:  (a) the individual multiples and financial benchmarking metrics for each of the companies the Financial Advisors relied upon in their joint Selected Publicly Traded Companies Analyses of each of Angie's List and HomeAdvisor; and (b) the individual multiples and financial benchmarking metrics for each of the transactions the Financial Advisors relied upon in their joint Selected Precedent Transactions Analysis.

54.     Without these material line item disclosures, it is impossible for Angie's List's shareholders to understand and interpret the various financial analyses that incorporated and/or relied upon such Projections, including in valuing Angie's List's shares.

55.     Given that the Financial Advisors relied upon the Projections in rendering their so-called "fairness opinions," failure to include the Projections in the S-4 constitutes a material omission and renders the financial analyses misleading.

56.     In addition to the above, the S-4 fails to disclose the following material information related to the process by which the Proposed Transaction was established:

> a.    The S-4 (at 66) states that the Board determined IAC's offer to purchase Angie's List for $8.75 per share on November 17, 2015 "undervalued Angie's List and its long-term standalone prospects."  In that regard, the S-4 states that on March 3, 2016, Angie's List unveiled its "new three-phase strategic plan" to be implemented in 2016, 2017, and 2018, whereby "improved operating results [as a result of the strategic plan] would likely not be realized before 2017."  Nevertheless, the S-4 (at 67) provides that shortly thereafter, on October 6, 2016, the Board created the Committee to "examine various potential strategic options," which commenced the process of selling the Company.  However, the S-4 fails to provide any

information as to what led the Board to change its opinion regarding the Company's best course of action from continuing to operate as a standalone company to initiating a sales process, particularly given the expectation of improved operating results related to the three-phase strategic plan were not yet expected to be realized. This material information provides Angie's List's investors with the necessary context to determine whether the decision to sell was made in good faith, or the result of conflict.

b.    The S-4 (at 67) states that the Financial Advisors were recommended by the Committee, and the Board concurred, on October 17, 2016. However, the S-4 lacks any information as to a selection process or any other vetting of A&C and BofA Merrill Lynch. Whether the Board and Committee properly identified and determined whether the financial advisors were conflicted in any way is material information to Angie's List's shareholders given that "the final presentation and separate opinions" of the Financial Advisors was a factor the Board considered in determining to recommend Angie's List's shareholders approve the Merger (S-4 at 83-84).

c.    The S-4 (at 68) discloses that non-disclosure agreements were entered into between Angie's List and 28 parties, but fails to disclose whether these agreements contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company. This material information is necessary to enable investors to properly determine whether all strategic options were fully vetted, and whether the Proposed Transaction is leaving any potential superior offers on the table.

d.    The S-4 (at 74) discloses Company A's best and final offer of a merger resulting in a combined entity with Angie's List's shareholders receiving 42% of the joint entity, as well as an additional $100 million. Although the S-4 states the Board considered this offer, there is no information as to the potential value of the offer, preventing Angie's List's shareholders from being able to determine whether the Board or Committee acted in self-interest in failing to negotiate a deal with Company A.

e.    The S-4 fails to disclose the timing and nature of any communications regarding future employment and/or directorships of Angie's List's officers and directors, including Defendant Evans, who actively participated in the negotiation of the Proposed Transaction with IAC on behalf of Angie's List, and Defendant Bowman, both of whom retained director roles on the post-Merger company's (Parent Sub) board of directors. Additionally, Defendants Evans and Bowman, both on the Board, voted in favor of recommending to Angie's List's shareholders that they approve the Merger. The information related to the discussions that led to Defendants Evans and Bowman remaining on the board of Parent

Sub is material, whereby it could reveal detrimental conflicts of interest during the Merger negotiations.

57.     The omission of the above material information renders multiple sections of the S-4 false and misleading, including, *inter alia*, the following:  (i) Certain Financial Projections; (ii) Financial Analyses; (iii) Opinions of Angie's List's Financial Advisors; (iv) Interests of Angie's List's Directors and Executive Officers in the Transactions; and (iv) Background of the Transactions.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Angie's List (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

59.     This action is properly maintainable as a class action for the following reasons:

a.     The Class is so numerous that joinder of all members is impracticable.  As of June 23, 2017, there were 60,841,326 shares of Angie's List Class A common stock outstanding held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b.     Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) and 20(a) of the Exchange Act in connection with the Proposed Transaction; and (ii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the S-4 as currently composed.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f.    A class action is superior to other available methods for fairly and efficiently adjudicating this controversy;

g.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## CAUSES OF ACTION

### COUNT I
**Claim for Violation of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder
(Against All Defendants)**

60.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

62.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that solicitation communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9(a).

63.     Rule 14a-9 further provides that, "[t]he fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the [Securities and Exchange] Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders.  No representation contrary to the foregoing shall be made."  17 C.F.R. § 240.14a-9(b).

64.     As discussed herein, the S-4 misrepresented and/or omitted material facts concerning, *inter alia*: the financial analyses performed by Angie's List's financial advisors in support of their so-called "fairness opinions" that approved the Merger Consideration, including the projections that the financial advisors relied upon in performing their financial analyses; and the sales process leading to the Merger.

65.     Defendants prepared, reviewed, filed and disseminated the false and misleading S-4 to Angie's List's shareholders.  In doing so, Defendants knew or recklessly disregarded that the S-4 failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

66.     The omissions and incomplete and misleading statements in the S-4 are material in that a reasonable shareholder would consider them important in deciding whether to tender

their shares.  In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

67.     By virtue of their positions within the Company and/or roles in the process and in the preparation of the S-4, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Merger negotiation and sales process and reviewing the financial advisors' complete financial analyses purportedly summarized in the S-4.

68.     The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Merger.

69.     Angie's List is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

70.     IAC (defined above as Parent, Parent Sub and Merger Sub), via its/their officers and/or directors, also prepared and/or reviewed the Proxy, which used IAC's name to solicit votes from Angie's List's shareholders.   IAC also provided its management projections to Angie's List's financial advisors in connection with their financial analyses.

71.     Defendants knew that Plaintiff and the other members of the Class would rely upon the S-4 in determining whether to vote in favor of the Merger.

72.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(a) of the Exchange Act and Rule 14d-9, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to vote in favor of the Merger.

73.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II
### Claim for Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

74.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

75.     The Individual Defendants acted as controlling persons of Angie's List within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Angie's List, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

76.     Each of the Individual Defendants were provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.   The S-4 contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the S-4.

78.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction.  The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

79.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

80.     As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

81.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.     Directing the Individual Defendants to disseminate an S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

E.      Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

F.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 20, 2017                              **SCHUCKIT & ASSOCIATES PC**

                                                  /s/ *Robert J. Schuckit*
                                                  Robert J. Schuckit, Esq.
                                                  4545 Northwestern Drive
                                                  Zionsville, IN 46077
                                                  Tel: 317-363-2400
                                                  Fax: 317-363-2257
                                                  Email: rschuckit@schuckitlaw.com

                                                  *Attorneys for Plaintiff*

**OF COUNSEL:**

**WOLF POPPER LLP**
Carl L. Stine
Sean M. Zaroogian
845 Third Avenue
New York, New York 10022
Tel:  212-759-4600
Fax:  212-486-2093
Email: cstine@wolfpopper.com
          szaroogian@wolfpopper.com